**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 6 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

                                         No. 96-3337

MARY KATHERINE JOHNSON,

    Defendant-Appellant,

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 96-CR-20013-1)

---

**Submitted on the briefs:**

Jackie N. Williams, United States Attorney, and Robert S. Streepy, Assistant United States Attorney, District of Kansas, Kansas City, Kansas, for Plaintiff-Appellee.

Roger L. Sherman, Overland Park, Kansas, for Defendant-Appellant.

---

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **MURPHY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Mary Johnson was charged with one count of devising and aiding and abetting the execution of a scheme to defraud, in violation of 18 U.S.C. §§ 1343, and 2. She was found guilty by a jury, sentenced to probation, and ordered to pay restitution. On appeal, she contends that the evidence was insufficient to support her conviction and that she was tried in violation of both her constitutional right to a speedy trial and the Speedy Trial Act, 18 U.S.C. §§ 3161 to 3174. We hold that her trial violated the Speedy Trial Act, and we reverse and remand to the district court for further proceedings.

# I

We turn first to the sufficiency of the evidence.[1] "The elements of wire fraud under 18 U.S.C. § 1343 are: '(1) a scheme or artifice to defraud or obtain money by false pretenses, representations or promises; and (2) use of interstate wire communications to facilitate that scheme.'" United States v. Cochran, 109 F.3d 660, 664 (10th Cir. 1997) (quoting United States v. Drake, 932 F.2d 861, 863 (10th Cir. 1991)). In reviewing a challenge to the sufficiency of the

---

[1]Although we hold that Ms. Johnson's Speedy Trial Act rights were violated and that the indictment must therefore be dismissed, see 18 U.S.C. § 3162(2), we must nonetheless address the sufficiency of the evidence because the district court may determine on remand that the case should be dismissed without prejudice to retrial, see id. If the evidence is not sufficient to support the conviction, the Double Jeopardy Clause would bar a retrial. See United States v. Taylor, 113 F.3d 1136, 1144 n.3 (10th Cir. 1997).

evidence, we must determine whether, after viewing the record most favorably to the government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In answering this question, we may neither weigh conflicting evidence nor consider the credibility of witnesses." United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir. 1997) (citations and internal quotations omitted).

Viewed in this light, the record reveals that Ms. Johnson participated in a scheme in which she and her brother, Thomas Whitlow, and others selected elderly victims from phone books and elsewhere, called the victims pretending to be a relative in trouble, and requested the victims to wire money for bail or for other fabricated emergencies. In support of the specific incident underlying the charge against Ms. Johnson, the government offered evidence that Mr. Whitlow placed several phone calls from a jail cell in which he was being held. The first call was placed collect to the victims, Mr. and Mrs. Ledbetter. The Ledbetters testified that they received a call and spoke with two men, one who claimed to be their grandson and the other who claimed to be a police officer. The men told Mr. Ledbetter that the purported grandson had been involved in an accident and needed $4000 to post bail and get out of jail. The Ledbetters wired the money via Western Union. Ms. Johnson, accompanied by members of her family and Jonathan Young, went to a grocery store with a Western Union office. Mr. Young

went into the store, obtained the wired funds, and gave the money to Ms. Johnson, who in turn gave Mr. Young $200. Thomas Whitlow then called Ms. Johnson's phone number from jail and arranged three-way calls to the Ledbetters. One call informed the victims that the $4000 had been received and another unsuccessfully requested an additional $6000. Although Ms. Johnson presented an alibi defense at trial, the telephone records, the testimony of Jonathan Young, and the evidence of admissions made by Ms. Johnson during two interviews with a police officer investigating Thomas Whitlow, are clearly sufficient to support a finding that she was a knowing participant in the scheme.

Ms. Johnson asserts the evidence is insufficient because there was no indication she participated in the first phone call made collect from the jail to the Ledbetters, in which they were requested to wire the $4000. Relying on United States v. Maze, 414 U.S. 395 (1974), Ms. Johnson contends the fraudulent scheme was completed by that first phone call so that her subsequent actions in placing the three-way calls, recruiting Mr. Young to retrieve the money, and dividing it were therefore not taken in furtherance of the scheme. In Maze, the Supreme Court held that because the fraudulent scheme there had come to fruition before the mailings in question were made, the mailings were not sufficiently related to the scheme to fall within the purview of the mail fraud statute. See generally United States v. Cardall, 885 F.2d 656, 680-82 (10th Cir. 1989) (discussing

-4-

Supreme Court's treatment of the scope of the mail fraud statute). Ms. Johnson's assertion that the fraudulent scheme here came to fruition upon completion of the first phone call to the victims is ludicrous and her reliance upon Maze is therefore unavailing. Moreover, while the government need not prove a gain or a loss to establish a wire fraud violation, see United States v. O'Malley, 535 F.2d 589, 592 (10th Cir. 1976), a defendant is guilty of aiding and abetting wire fraud when a fraudulent scheme does bear fruit if she is a knowing participant in bringing about the successful completion of the scheme. The evidence here showed Ms. Johnson's participation in obtaining the $4000 defrauded from the Ledbetters. The evidence was more than sufficient to support her conviction.

## II

The acts underlying the charged crime occurred in July 1994 and the indictment was filed in February 1996. Ms. Johnson contends the government's delay in indicting her violated her constitutional rights to a speedy trial, citing Barker v. Wingo, 407 U.S. 514 (1972).[2] We agree with the government that Ms.

---

[2]As we pointed out in note 1, because dismissal under the Speedy Trial Act may be ordered without prejudice, we must consider arguments that, if successful, would bar retrial. Preindictment delay that rises to a constitutional violation requires dismissal of the indictment with prejudice to retrial, see United States v. Marion, 404 U.S. 307, 324 (1971), and we therefore address this argument despite our resolution of the Speedy Trial Act issue.

Johnson's reliance on <u>Barker v. Wingo</u> is misplaced. That case concerned a defendant's Sixth Amendment right to a speedy trial, a right that is not triggered until an accused is formally charged or arrested. <u>See</u> <u>United States v. Marion</u>, 404 U.S. 307, 320 (1971). Ms. Johnson bases her constitutional claim on preindictment delay, a matter receiving limited protection under the Due Process Clause of the Fifth Amendment. <u>See</u> <u>United States v. Lovasco</u>, 431 U.S. 783, 789 (1977). Preindictment delay is not a violation of the Due Process Clause unless the defendant shows both that the delay caused actual prejudice and that the government delayed purposefully in order to gain a tactical advantage. <u>United States v. Engstrom</u>, 965 F.2d 836, 839 (10th Cir. 1992).

Ms. Johnson has failed to make either showing. She asserts generally that her alibi defense was prejudiced by the lapse of time because the memories of potential witnesses have faded. However, she fails to identify any specific witnesses who would have been able to testify favorably to her had the trial been held earlier.

> Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice for the purposes of impermissible preindictment delay; defendant must be able to show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided his defense.

<u>United States v. Jenkins</u>, 701 F.2d 850, 855 (10th Cir. 1983).

Ms. Johnson has also failed to establish that the delay was undertaken

purposefully by the government to gain a tactical advantage or to harass.  Indeed,

Ms. Johnson concedes she does not know the reason for the delay.  See Aplt.'s Br.

at 14.  The record likewise contains no evidence the government delayed indicting

her for improper reasons.  Ms. Johnson has thus failed to establish a constitutional

violation arising from preindictment delay.

## III

Ms. Johnson contends her rights under the Speedy Trial Act were violated.

The Act provides that a defendant must be tried within seventy days from the

filing date of the indictment or from the date on which the defendant appears

before a judicial officer, whichever date is later.  See 18 U.S.C. § 3161(c)(1).

The indictment was filed on February 15, 1996, and Ms. Johnson made her

appearance on February 20, 1996, starting the Speedy Trial Act clock.

Trial was originally scheduled to commence on May 13, 1996, a date within

the seventy day period as extended by time attributable to pretrial motions under

section 3161(h)(1)(F).  On that date, the court held a hearing and ordered a

continuance because it was engaged in another trial and no other district judge

was available to take the case.  At the hearing, the government requested the court

to make a finding under section 3161(h)(8)(A) that the ends of justice would be

served by a continuance, and also requested the court to note for the record that

the government would find a continuance "helpful . . . in providing transportation" for the Ledbetters, who lived in North Carolina. Rec., vol. II at 3. The court made an oral finding that a continuance would serve the ends of justice, giving as its only reason that the first available date for trial was June 24.

The government subsequently filed a written motion requesting the court to supplement the oral findings in support of the continuance by adding an additional finding that the continuance was needed to arrange transportation for the government's witnesses and to extend the trial date past the scheduled sentencing date for defendants in related cases who were to testify for the government at Ms. Johnson's trial. In response, the court issued an order adding the first of these reasons to its earlier finding that the ends of justice would be served by the continuance. Trial commenced on June 24. The parties agree on appeal that the trial was only timely if the continuance ordered by the court on May 13 pursuant to section 3161(h)(8)(A) resulted in excludable time.

The Speedy Trial Act specifically states that "no continuance under [section 3161(h)(8)(A)] shall be granted because of general congestion of the court's calendar." 18 U.S.C. § 3161(h)(8)(C). The prosecution acknowledges this prohibition on appeal, but contends the supplemental findings entered on the record subsequent to the grant of the continuance make clear that the district court did not rely on its calendar alone in postponing trial. In United States v. Doran,

882 F.2d 1511, 1516-17 (10th Cir. 1989), we addressed the circumstances in which findings in support of an ends-of-justice continuance made on the record *after* the continuance was granted, as in this case, will be considered to support that continuance. We held:

> Although findings may be *entered on the record* after the fact, they may not be *made* after the fact. The balancing must occur contemporaneously with the granting of the continuance because Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period. A final general principle thus follows: if findings are entered ex post facto, it must be clear from the record that [the court] did consider the factors identified by the statute *when* it granted the continuance.

Id. at 1516 (internal quotations and citations omitted); see also United States v. Spring, 80 F.3d 1450, 1456-57 (10th Cir. 1996) (applying Doran and rejecting Speedy Trial Act challenge to *nunc pro tunc* findings when record indicated trial court made sufficient contemporaneous findings); United States v. Pasquale, 25 F.3d 948, 951-52 (10th Cir. 1994) (applying Doran and reversing conviction when record contained no contemporaneous findings).

Applying Doran to the instant circumstances, we have reviewed the May 13 hearing to determine whether it contains some indication the district court adopted at that time the government's additional reasons in granting the continuance, or whether the court relied exclusively on the forbidden factor of calendar congestion. Immediately after the government suggested the additional

-9-

factors to the court, the court made the following ruling.

> Well, the Court does find that the case must be continued and I find that the ends of justice served by continuing the case outweigh the best interests of the public and the defendant in a speedy trial. *My reasons for that finding are that the first available date that the Court will have to commence this trial is June 24, 1996.* The Court has made efforts to determine if other members of the Court would be available to try this case at an earlier date and unfortunately they are not.
>
> If it develops that the case can be tried sooner by me or by some other judge of the Court, this date may be advanced. I want you to understand that. But for the present, the case is continued to June 24, 1996 at 1:30 p.m. *for the reason that the Court is presently engaged in trial and is not available.*

Rec., vol. II at 4-5 (emphasis added).

Thus, at the time the court granted the ends-of-justice continuance in this case, the only factor it relied on, or even mentioned, was its calendar. "The requirements of the Speedy Trial Act are specific, and Congress intended exact compliance with those requirements." Doran, 882 F.2d at 1517. "Neither a congested court calendar nor the press of a judge's other business can excuse delay under the Act." United States v. Andrews, 790 F.2d 803, 808 (10th Cir. 1986) We have held that the ends-of-justice continuance is "a 'rarely used tool,'" Doran, 882 F.2d at 1515, and that the record must clearly establish the court considered the proper factors at the time the continuance was granted, id. at 1516. We therefore reject the government's argument that post hoc findings, made at the urging of the government to overcome the court's obvious reliance on an

-10-

improper factor, are sufficient to validate the continuance.

Indeed, the government's position appears somewhat disingenuous. In the district court, the government characterized its post hoc motion as one for *supplemental* findings in support of the continuance, moving the court to make *additional* findings. Rec., vol. I, doc. 32. We view this as an admission that the court in fact had not made those findings at the time the continuance was granted. Cf. Spring, 80 F.3d at 1457 (government characterized its motion for *nunc pro tunc* findings as request to "simply formalize rulings previously made . . . as reflected . . . in the recorded proceedings"). Moreover, despite its purported need for more time to bring in its out-of-state witnesses, the government announced it was ready for trial on May 13 and Mr. Ledbetter testified at trial that he would have been there for trial on May 13. Finally, we point out that one of the reasons the government set out in its motion for additional findings was not even mentioned by the government at the time the continuance was granted. Accepting such findings here, in the absence of any indication the court relied on those findings at the time the continuance was granted, would violate both the letter and the spirit of the Act. See Andrews, 790 F.2d at 808.

Accordingly, we conclude that Ms. Johnson's Speedy Trial Act rights were violated, and the charge against her must therefore be dismissed. Such a dismissal

-11-

may be with or without prejudice.  <u>See</u> 18 U.S.C. § 3162(2).

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

<u>Id.</u>  We observe in this regard that Ms. Johnson bears no responsibility for the circumstances leading to the Speedy Trial Act violation, and that she properly asserted her rights under the Act.  We further observe that the government delayed almost two years in indicting her for a relatively uncomplicated offense.  Ms. Johnson suffers from serious health problems and was sentenced to three years probation, of which she was to serve ninety days in a half-way house, and ninety days on home detention under electronic monitoring.  Both of these periods have passed.  Under these circumstances, we believe it appropriate to follow our general practice and remand to the trial court to assess whether the dismissal should be with or without prejudice.  <u>See</u> <u>Doran</u>, 882 F.2d at 1518.

**REVERSED** and **REMANDED** for further proceedings.