**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LAMAR LOWE,

Defendant-Appellant.

No. 97-5072
(D.C. Nos. 96-CV-1109-C
&
93-CR-35-C)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **McKAY**, and **LUCERO**, Circuit Judges.

Lamar Lowe appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence.[1]  We previously granted a certificate of appealability,[2] and we now affirm.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

[2]     In our order granting petitioner a certificate of appealability, we asked the

(continued...)

On December 23, 1992, Lamar Lowe and three accomplices robbed a federal credit union. Mr. Lowe never actually entered the credit union, but simply drove the getaway car. His accomplices were armed and, in the course of the robbery, brandished their firearms. All four men were charged with conspiracy, 18 U.S.C. § 371;  armed bank robbery, 18 U.S.C. § 2113(a), (d);  and using and carrying a firearm during and in relation to a violent crime, 18 U.S.C. § 924(c)(1). With respect to the latter two crimes, the men were also charged on an aiding and abetting theory, pursuant to 18 U.S.C. § 2.

After a jury trial in 1993, Lamar Lowe was convicted on all counts. His convictions were affirmed on direct appeal. United States v. Lowe, 1994 WL 237502 (10th Cir. June 3, 1994). Mr. Lowe subsequently brought this motion to vacate judgment and sentence under 28 U.S.C. § 2255, challenging the validity of his § 924(c) conviction in light of Bailey v. United States, 116 S. Ct. 501 (1995), which was decided after his convictions were affirmed.[3] He argued that, given

---

[2](...continued)
government to brief the following issues:  "1) whether Bailey v. United States, 116 S. Ct. 501 (1995), applies to this case and 2) whether the jury instructions were proper and the evidence sufficient to convict Petitioner of aiding and abetting and/or the use or carrying of a firearm."  Order dated 10/21/97.

[3]      Generally, we may not consider defaulted claims in a § 2255 motion absent a showing either of cause for the default and actual prejudice, or that manifest injustice will result if the claims are barred.  See United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995);  see also United States v. Holland, 116 F.3d 1353, 1356 (10th Cir.) (assessing cause and prejudice in connection with a § 2255

(continued...)

-2-

that he was the getaway driver and unarmed in that capacity, there was no evidence that he used or carried a firearm within the meaning of Bailey. The district court denied his motion, concluding that the "use" instruction given at trial was not invalid under Bailey and that there was sufficient evidence to support Mr. Lowe's 924(c)(1) conviction as an accomplice. On appeal from that denial, we review the district court's legal rulings de novo, and its findings of fact for clear error. See United States v. Cox, 83 F.3d 336, 338 (10th Cir. 1996).

Mr. Lowe argues on appeal that there is insufficient evidence that he aided and abetted the use of a firearm within the meaning and scope of Bailey. As a preliminary matter, we note that Bailey did not purport to alter the law governing accomplice liability with respect to violations of § 924(c). It simply altered the legal interpretation of the statutory term "use."[4] Bailey rejected the broad definition of "use" adopted by this and other circuits, and instead held that

---

[3](...continued)

Bailey claim), cert. denied, 118 S. Ct. 253 (1997). Here, the government did not raise procedural bar, and the district court proceeded directly to the merits of Mr. Lowe's motion. Thus, the issue has been waived. See United States v. Hall, 843 F.2d 408, 410 (10th Cir. 1988). Although we have the authority to raise the question of procedural bar sua sponte, see Hines v. United States, 971 F.2d 506, 509 (10th Cir. 1992), we decline to do so here where, even assuming that the issues are not barred, Mr. Lowe's claims fail on their merits.

[4]    We note that we have also observed that Bailey provides some guidance regarding the correct application of the "carry" prong of § 924(c)(1). See United States v. Spring, 80 F.3d 1450, 1464 (10th Cir.), cert. denied, 117 S. Ct. 385 (1996).

§ 924(c)(1) "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." Bailey, 116 S. Ct. at 505. Of course, an improper definition of "use" or "carry" in the jury instructions can implicate the validity of a conviction for aiding and abetting a 924(c) violation. See United States v. Spring, 80 F.3d 1450, 1464-66 (10th Cir.) (924(c) conviction based on accomplice liability reversed where "use" instruction was incorrect under Bailey and "carry" instruction was incomplete), cert. denied, 117 S. Ct. 385 (1996).

In this case, although the indictment charged Mr. Lowe (and his co-defendants) with "us[ing] and carry[ing]" a firearm in violation of § 924(c), the jury was never instructed on the "carrying" prong.[5] Rather, the relevant instructions read as follows:

> You are instructed that in regard to the offense charged in Count Three of the Indictment, Title 18, United States Code, Section 924(c)(1), provides in pertinent part that it shall be unlawful to use a firearm during and in relation to any crime of violence for which a person may be prosecuted in a court of the United States.
>
> . . . .
>
> The two essential elements of Count Three are as follows:

---

[5]     In light of our conclusion in this case that the "use" instruction was proper and there was sufficient evidence to support a conviction for "use," we reject Mr. Lowe's argument that the omission of a "carry" instruction constitutes reversible error.

First: that on or about December 23, 1992, the defendant committed the felony robbery of a credit union; and

Second: that during and in relation to commission of the felony, the defendant used a firearm.

. . . .

The defendant is considered to have used a firearm if during the commission of the robbery, a firearm or other dangerous weapon was used in any manner to facilitate the offense.

Trial Record, file #2, doc. 72, at 38-40.

We agree with the district court that we are not presented in this case with instructions that per se violate the teachings of Bailey. They do not, by their own terms, relieve the government of its obligation to prove active employment, nor do they in any way state, suggest, or imply that mere evidence of the proximity and accessibility of a firearm is sufficient to establish "use." Cf., e.g., Spring, 80 F.3d at 1464 (where court defined "'using or carrying'" as "'having a firearm readily available to assist or aid in the commission of the alleged underlying crime of violence'" and further instructed that it was "'not necessary for the government to show that [the defendant's accomplice] fired, brandished or displayed the firearm during the underlying crime of violence'"). The question is whether a more specific definition of "use" was required. In reviewing jury instructions for error, "we conduct a de novo review to determine whether, as a whole, they correctly stated the governing law and provided the jury with an

ample understanding of the issues and applicable standards." Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1442 (10th Cir.), petition for cert. filed, 66 U.S.L.W. 3137 (U.S. Aug. 6, 1997) (No. 97-232). "We consider all the jury heard and, from the standpoint of the jury, decide not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine these issues." United States v. Voss, 82 F.3d 1521, 1529 (10th Cir.) (quotation omitted), cert. denied, 117 S. Ct. 226 (1996). Here, the jury heard uncontroverted evidence that Mr. Lowe's co-defendants entered the credit union with firearms in hand and pointed them at credit union employees and a customer during the course of the robbery. This case simply did not raise the kind of factual issue as to whether the activity in question constituted "use" as might have necessitated a more specific definition of "use." Accordingly, we find no error here.

Whether evidence is sufficient to support a conviction is a question of law which we review de novo. See United States v. Dashney, 117 F.3d 1197, 1202 (10th Cir. 1997). "In reviewing the sufficiency of evidence to sustain a jury's guilty verdict, we examine the evidence in the light most favorable to the government in order to determine whether the evidence together with all reasonable inferences to be drawn therefrom, is substantial enough to establish guilt beyond a reasonable doubt." United States v. Wacker, 72 F.3d 1453, 1462

(10th Cir. 1995) (quotation omitted), <u>cert. denied</u>, 117 S. Ct. 136 (1996). In conducting our review, we "neither weigh conflicting evidence nor consider the credibility of witnesses." <u>See</u> <u>United States v. Johnson</u>, 120 F.3d 1107, 1108 (10th Cir. 1997) (quotation omitted).

Under an aiding and abetting theory of liability, any person who "aids, abets, counsels, commands, induces or procures" the commission of a crime is punishable as a principal. 18 U.S.C. § 2(a). We have previously held that

> [t]o be guilty of aiding and abetting, a defendant must willfully associate with the criminal venture and aid such venture through affirmative action. The government must prove, through direct or circumstantial evidence, more than mere presence at the scene of the crime even if coupled with knowledge that the crime is being committed. While evidence of relatively slight moment may warrant a jury's finding of participation, a defendant may not stumble into aiding and abetting liability by inadvertently helping another in a criminal scheme unknown to the defendant.

<u>United States v. Jones</u>, 44 F.3d 860, 869 (10th Cir. 1995) (quotations and citations omitted) (reviewing the sufficiency of evidence to sustain a conviction for aiding and abetting possession with intent to distribute). A conviction under an aiding and abetting theory of liability requires at a minimum that the alleged accomplice was "a knowing participant." <u>Id.</u> at n.2; <u>see</u> <u>Spring</u>, 80 F.3d at 1466 (where in reversing for plain error an aiding and abetting conviction under § 924(c), this court cited by way of comparison a Third Circuit case sustaining such a conviction where the evidence clearly showed that the defendant

"'probably knew in advance, and most certainly knew at the time,'" that his fellow robber was using and carrying a firearm).

In looking in particular at aiding and abetting convictions under § 924(c), the Second Circuit has held that a defendant who was not actually present during a robbery "cannot be convicted as an aider and abettor under § 924(c) merely because he knew that a firearm would be used or carried [during the course of a robbery] and, with that knowledge, performed an act to facilitate or encourage the robbery itself." United States v. Medina, 32 F.3d 40, 45 (2d Cir. 1994). Instead, proof is required that the defendant "performed some act that directly facilitated or encouraged the use or carrying of a firearm." Id.; accord United States v. Bancalari, 110 F.3d 1425, 1429-30 (9th Cir. 1997).

In this case, upon independent review of the complete trial transcript,[6] we agree with the district court's conclusion that there is sufficient evidence to support Mr. Lowe's conviction under § 924(c) as an accomplice. The evidence is clear that Mr. Lowe masterminded the robbery. He suggested the crime, see Tr. at 22, recruited his co-defendants, see id. at 22, 24, 26, 135, 137-138, scouted for the best target, see id. at 27, purchased necessary materials, see id. at 27-28

---

[6]    Although both parties only attached excerpts of the transcript to their briefs, because Mr. Lowe is pro se on appeal, we requested and received from the district court the complete record of the original criminal proceeding, including the trial transcript.

-8-

(gloves, ski mask, and tote bag), directed implementation, see id. at 35 ("Lamar was telling us to make them open the drawers that wasn't open, and if we could, go into the vault"), 36 ("[Lamar] said he wasn't going in;" "Told us that he, you know, he did the stuff too many times. He wanted to turn us on to the game."), and ultimately drove the getaway car. Mr. Lowe does not dispute his level of involvement in the planning and implementation of the robbery, nor does he dispute that firearms were actively employed during the robbery. Rather, he contends that there was insufficient evidence that he knew his co-defendants had weapons, that he knew those weapons were going to be actively employed (as opposed to simply possessed or carried), and that he assisted in their employment. We disagree.

The evidence reveals that the defendants initially set out to rob the credit union approximately one week before the deed was actually done. In explaining why that attempt was aborted, one of the other defendants, Marcoe Lowe, testified that in circling the building, "every time we came around there was people in the parking lot, and we didn't want nobody to see us run in with ski masks and guns in our hands." Trial Tr. at 34-35. Another defendant, Keelan Woodard, recalled that they abandoned their first attempt not because there were too many people around, but because there was an argument over the fact that Lamar said he was not going in. See id. at 143-44, 160. But he confirmed that, on the way to the

credit union, it was clear that they had three guns, see id. at 160, and on the day of the robbery, "it was clear that at least three people were going to have guns going in," id. at 161. When asked whether they had discussed the fact that they were going to have three guns when they went in, Mr. Woodard replied, "On the way going we didn't discuss it. We already knew we had three guns. Before we even left the house we knew we had three guns." Id. at 162.

Although Marcoe's testimony suggests that he was only aware of two guns, his testimony clearly supports the conclusion that Lamar knew firearms were to be employed. Marcoe testified that he had a conversation with Lamar about the fact that the guns were not loaded. See id. at 96. He testified that Lamar "told us that his [gun] wasn't loaded and the other gun wasn't loaded." Id. When asked whether there was any conversation about why they weren't loaded, Marcoe testified, "No conversation. [Lamar] was just like, you know, when you go in, they would see the gun and wouldn't think whether or not they was loaded or not. They would just, you know, be too scared to." Id. at 97. Finally, and most compelling, Marcoe testified that on the date of the actual robbery, he got the gun he used from Lamar; he testified that Lamar handed him (Marcoe) the gun as he (Marcoe) was getting out of the car. Id. at 45. We conclude that the evidence was sufficient for the jury to have concluded beyond a reasonable doubt that Mr.

-10-

Lowe knew firearms were going to be actively employed and that he assisted their employment.

**AFFIRMED**.  The mandate shall issue forthwith.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

-11-