**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 9 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

      v.

RICKY CARTER,

    Defendant-Appellant.

No. 97-1351
(D.C. No. 97-CR-23-Z)
(Dist. of Colorado)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BARRETT**, and **BRISCOE** Circuit Judges.

Ricky Carter (Carter) appeals his conviction and sentence entered following a jury trial wherein he was found guilty of four counts of knowingly distributing and possessing with intent to distribute cocaine base (also known as crack cocaine), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

On September 26, 1995, September 29, 1995, and twice on October 5, 1995, police informant Scott Portnoy (Portnoy) purchased small quantities of crack cocaine from Carter in controlled buys. During each buy, Portnoy wore a transmitter which allowed police officers to record the transaction

---

[*]      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

between Portnoy and Carter.

On October 17, 1995, Detective Boyles obtained an arrest warrant for Carter and a search warrant for Carter's residence. However, neither warrant was executed. In December, 1996, Carter was arrested in an unrelated drug case.

On January 22, 1997, the grand jury returned an indictment charging Carter with four counts of knowingly distributing and possessing with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), on or about September 26, 1995, September 29, 1995, and October 5, 1995, in the amounts of 0.94 grams, 2.329 grams, 1.288 grams, and 0.462 grams. In April, 1997, Carter proceeded to trial and was found guilty of all four counts. He was sentenced to 169 months imprisonment.

On appeal, Carter contends that: (1) he was denied his constitutional right to a trial by a jury of his peers because there were no African Americans in the jury venire; (2) the district court erred in permitting the jury to read and review transcripts of audiotape recordings of the alleged drug transactions; (3) he was denied due process by the 15 month delay between the alleged drug transactions and his arrest and indictment; and (4) the sentencing guidelines for crack cocaine are unconstitutional.

I. Jury Venire

The Jury Selection and Service Act of 1968 (the Act), 28 U.S.C. §§ 1861 - 1878, "governs the selection of grand and petit juries in federal court, and 'seeks to ensure that potential grand and petit jurors are selected at random from a representative cross section of the community and that all qualified citizens have the opportunity to be considered for service.'" United States v. Contreras, 108 F.3d 1255, 1265 (10th Cir.) (quoting United States v. Bearden, 659 F.2d 590, 593 (5th

Cir.1981), *cert. denied*, 456 U.S. 936 (1982)), *cert. denied*, ___ U.S. ___ (1997). *See* 28 U.S.C. § 1861. Section 1867 of the Act provides "the exclusive means by which a person accused of a Federal crime, ... may challenge any jury on the ground that such jury was not selected in conformity with the provisions of [the Act]." 28 U.S.C. S 1867(e). *See* <u>United States v. Bedonie</u>, 913 F.2d 782, 794 (10th Cir.1990) ("Section 1867(e) 'provides the exclusive means for a party charged with a federal crime to challenge a jury.'") (quoting <u>United States v. Cooper</u>, 733 F.2d 1360, 1366 (10th Cir.), *cert. denied*, 467 U.S. 1255 (1984)), *cert. denied*, 501 U.S. 1253 (1991).

In criminal cases, § 1867 requires a party challenging the jury selection process to make his challenge by motion "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier." 28 U.S.C. S 1867(a). The motion must be accompanied by a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of [the Act]." 28 U.S.C. § 1867(d). The Act's "procedural requirements are designed to give the district court an opportunity to evaluate the alleged noncompliance and to correct such noncompliance before precious judicial resources are invested in a trial." <u>Contreras</u>, 108 F.3d at 1266. "Strict compliance with these procedural requirements is essential." Id. "'If a party fails to comply with the statutory procedures [of § 1867], a court may not hear the claim.'" <u>Bedonie</u>, 913 F.2d at 974 (quoting <u>United States v. Martinez-Nava</u>, 838 F.2d 411, 413 (10th Cir.1988)).

Although during the jury selection process, Carter generally objected to the jury venire on the grounds that there were no African Americans represented, he did not comply with the requirements of § 1867. *See* R.O.A., Vol. II at 68-69. Carter's failure to file a motion challenging the district court's jury selection process with an adequate sworn statement as required by 28 U.S.C.

-3-

§ 1867(d) bars our review of this claim.[1] *See* <u>Contreras</u>, 108 F.3d at 1267-68 (defendant's claim under the Act precluded for failure to accompany the motion challenging the jury selection process with a sworn affidavit as required by § 1867(d)); <u>Cooper</u>, 733 F.2d at 1366 (no indication defendant complied with exclusive procedures provided for in § 1867).

## II. Transcripts of Audiotape Recordings

At trial, the parties stipulated to the admission of the audiotape recordings of the alleged drug transactions between Portnoy and Carter and the district court allowed the jury to review transcripts of the recordings while the jury listened to the tapes. Carter objected to the use of the transcripts, arguing that they did not accurately reflect the conversations on the tapes and that the jury should be allowed to make their own determination of what was recorded on the tapes without being unduly influenced by the transcripts. The district court overruled Carter's objections and offered Carter the opportunity to submit his own transcripts as an aid to the jury if he wished. Carter did not avail himself of this opportunity.

The law is well settled in this circuit that it is not necessarily an abuse of discretion to allow transcripts to be used by a jury to clarify recorded conversations. *See* <u>United States v. Davis</u>, 929 F.2d 554, 559 (10th Cir.1991). In <u>United States v. Lucero</u>, 601 F.2d 1147, 1149-50 (10th Cir.1979), we held that a jury may examine transcripts of tape recordings if the trial court instructs the jury that the tapes and not the transcripts are the evidence and that the transcripts are provided only to assist

---

[1]    We also note that although Carter's appellate counsel knows all the "buzz" words necessary to discuss a jury venire challenge, he does not advance sufficient argument or authority for adequate appellate review and that the extremely limited statistical data presented on appeal was not presented to the district court. *See* <u>Murrell v. Shalala</u>, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaints which fail to frame and develop an issue are insufficient to invoke appellate review); (R.O.A., Vol. II at 68-69).

their understanding of the tapes. *See* Davis, 929 F.2d at 559. Here, the district court gave such instructions. *See* R.O.A., Vol. I, Doc. 6 at 5; *id.* Vol. III at 345. An adequate foundation for their consideration was laid by the testifying officers and Portnoy and defense counsel had ample opportunity to cross-examine to discredit the transcripts. In addition, the district court offered Carter the opportunity to introduce his own transcripts of the tape recordings if he felt the government's were inaccurate. *Id.* Vol. II at 20. Therefore, the district court did not abuse its discretion in allowing the jury to examine these transcripts, even though they were not admitted in evidence.

### III. Preindictment Delay

"'[T]he Due Process Clause has a limited role to play in protecting against oppressive [pre-indictment] delay.'" United States v. Trammell, 133 F.3d 1343, 1351 (10th Cir. 1997) (quoting United States v. Lovasco, 431 U.S. 783, 789 (1977)). "Preindictment delay is not a violation of the Due Process Clause unless the defendant shows both that the delay caused actual prejudice and that the government delayed purposefully in order to gain a tactical advantage." *Id.* (quoting United States v. Johnson, 120 F.3d 1107, 1110 (10th Cir.1997)). "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice. Defendant must show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided the defense." *Id.* (citing United States v. Jenkins, 701 F.2d 850, 855 (10th Cir.1983)).

Carter argues the government's delay in arresting and indicting him prejudiced his case because of the difficulty in reconstructing events that may or may not have occurred and trying to

remember what he was doing in September and October of 1995.[2]  He does not allege with any

specificity the loss of any witnesses or evidence that would have benefitted his case.  Further, Carter

has completely failed to establish that the government's failure to indict him sooner was an

intentional ploy to gain a tactical advantage.  Although he alleges that he was indicted in this case

to "squeeze" him into cooperating with authorities in the unrelated drug case for which he was

originally arrested, he provides no evidence to support his allegation.  In contrast, the government

maintains the preindictment delay was due, in part, to the fact that the government's key witness,

Portnoy, had absconded to Texas and that Carter's whereabouts were unknown.  Therefore, Carter's

due process rights were not violated.

## IV.  Sentencing Guidelines

Carter challenges the constitutionality of the sentencing guidelines for crack cocaine or

cocaine base.  He asserts that the sentencing guidelines for crack cocaine deny him equal protection

because they enhance sentencing for a substance, crack cocaine, which is essentially the same as

powder cocaine and unfairly discriminate against African Americans.

"We have repeatedly rejected each of the arguments necessary to find . . . [a] violation[] of

equal protection."  United States v. Williamson, 53 F.3d 1500, 1530 (10th Cir.), *cert. denied*, 516

U.S. 882 (1995).  *See* United States v. Williams, 45 F.3d 1481, 1486-87 (10th Cir. 1995).  We have

also rejected the argument that a disparate impact, i.e., on African Americans, necessarily implies

---

[2]  In general, we review whether a defendant's due process rights were denied by a delay in bringing an indictment for clear error.  Trammell, 133 F.3d at 1351.  However, Carter did not raise this issue in the district court.  Therefore, our review is only for plain error. *See* United States v. Gomez, 67 F.3d 1515, 1521 (10th Cir. 1995) (failure to assert a constitutional right does not waive the issue, but review is only for plain error), *cert. denied*, 516 U.S. 1060 (1996).

a finding of intentional discrimination and that the distinction between crack and powder cocaine is not a rational distinction. *Id.* Therefore, there is no constitutional violation in Carter's sentencing.

**AFFIRMED.**

Entered for the Court:

James E. Barrett,
Senior United States
Circuit Judge