FILED
United States Court of Appeals
Tenth Circuit

**March 3, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NELLY IDOWU,

    Defendant - Appellant.

No. 25-4058
(D.C. No. 2:20-CR-00284-TS-3)
(D. Utah)

_____

### ORDER AND JUDGMENT[*]
_____

Before **BACHARACH**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

Nelly Idowu opened and controlled United States bank accounts that received

deposits from victims of an online wire fraud scheme. A jury convicted her of

conspiracy to commit money laundering and two counts of conducting monetary

transactions with criminal proceeds. 18 U.S.C. §§ 1956(h), 1957. In this second

appeal following our previous remand for resentencing, she contends the district

court erred by calculating her base offense level under § 2S1.1(a)(1) rather than

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 2S1.1(a)(2) of the United States Sentencing Guidelines.  Because she did not object to the application of § 2S1.1(a)(1) at either her original sentencing or her resentencing, we review for plain error.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I

Ms. Idowu's convictions stem from her involvement in an online romance scheme.  A group known as the "Yahoo Boys," largely based in Nigeria, created fake online personalities and befriended individuals in the United States.  R., vol. III at 90.  After gaining the trust of their victims—many of whom were elderly—they induced them to send money under fictitious pretexts.  And because the group was based overseas, the scheme relied on bank accounts in the United States to avoid suspicion and "complete the fraud."  *Id.*

Ms. Idowu provided that critical link.  She opened and controlled numerous U.S. based bank accounts including business accounts under a shell LLC and other accounts under an alias.  She never directly communicated with any of the victims.  But for around three years, those accounts received hundreds of thousands of dollars from fraud victims.

In preparation for sentencing, the United States Probation Department submitted a Presentence Investigation Report (PSR) that calculated Ms. Idowu's base offense level under U.S.Sent'g Guideline Manual § 2S1.1(a)(1) (2023).  Ms. Idowu did not object to the application of § 2S1.1(a)(1).  The PSR calculated an adjusted offense level of 29, yielding a guidelines range of 87-108 months' imprisonment.

2

At the sentencing hearing, the district court considered the 18 U.S.C. § 3553(a) sentencing factors and found "that Ms. Idowu was part of a romance scheme that targeted individuals through social media and other means online" and that she and others "then moved the money through bank accounts, including between each other's and to accounts outside of the United States." R., vol. II at 22. The court sentenced Ms. Idowu to 72 months' imprisonment and 36 months of supervised release.[1]

Ms. Idowu appealed. During the appeal, the parties filed a Joint Motion to Remand for Resentencing to correct a mathematical error in the offense level calculation.[2] This court granted the motion. On remand, the revised PSR again applied USSG § 2S1.1(a)(1) to calculate the base offense level. Ms. Idowu again did not object. The revised PSR corrected the mathematical error and applied a previously omitted two-level enhancement, resulting in the same offense level of 29 and a guidelines sentencing range of 87-108 months. The district court reimposed a sentence of 72 months' imprisonment and 36 months of supervised release. Ms. Idowu again appeals.

---

[1] The district court adopted the findings in the PSR. R., vol. II at 13. Ms. Idowu raised objections to the PSR which the district court sustained in part and overruled in part. The substance of those objections is not on appeal.

[2] The PSR calculated the adjusted offense level at 29 but the values as presented in the PSR properly summed to 27.

II

Ms. Idowu challenges the calculation of her base offense level under

§ 2S1.1(a)(1).  Section 2S1.1(a) provides two paths for determining the base offense

level for money laundering convictions.  The Guidelines distinguish between "direct

money launderers," and "third party money launderers."  USSG Supp. to App. C,

Amend. 634, at 223 (2002).  A direct money launderer is one who (1) "committed the

underlying offense" or (2) "would be accountable for the underlying offense" under

§ 1B1.3(a)(1)(A)—the relevant-conduct guideline.  USSG § 2S1.1(a)(1)(A).  A

defendant is accountable under the relevant-conduct guideline when they

"committed, aided, abetted, counseled, commanded, induced, procured, or willfully

caused" the underlying offense.  § 1B1.3(a)(1)(A).  If either condition is satisfied, the

court calculates the base offense level by looking to "[t]he offense level for the

underlying offense from which the laundered funds were derived."  § 2S1.1(a)(1).

Here, the underlying offense is wire fraud, which requires "(1) a scheme or artifice to

defraud or obtain money by false pretenses, representations or promises; and (2) use

of interstate wire communications to facilitate that scheme."  *United States v.*

*Johnson*, 120 F.3d 1107, 1108 (10th Cir. 1997) (internal quotation marks omitted);

*see also* 18 U.S.C. § 1343.

Alternatively, the base offense level for third-party money launderers is

determined by adding eight levels to the offense level "corresponding to the value of

the laundered funds."  USSG § 2S1.1(a)(2).  A third-party money launderer is one

"who launder[ed] the proceeds generated from underlying offenses that the defendant

4

did not commit or would not be accountable for." USSG Supp. to App. C, at 223. In drawing the distinction between direct and third-party money launderers, the commission sought to reflect "the culpability of the defendant" and "the seriousness of the money laundering conduct." USSG Supp. to App. C, at 222. Ms. Idowu argues she is a less culpable third-party money launderer who should have been sentenced under subsection (a)(2). In her view, if the court had correctly applied subsection (a)(2), her adjusted offense level would have been 26 with a Guidelines range of 63-78 months' imprisonment, rather than 87-108 months.

Ms. Idowu acknowledges she "did not object to the application of § 2S1.1(a)(1), rather than § 2S1.1(a)(2) at sentencing," so our review is for plain error. Aplt. Opening Br. at 11. To prevail on plain error review, Ms. Idowu must show "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Malone*, 937 F.3d 1325, 1327 (10th Cir. 2019) (internal quotation marks omitted). Failure to satisfy any one of the four prongs defeats a plain-error challenge. *United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008).

### III

We need not decide whether the district court erred, because any error would not have been plain. "An error is plain if it is clear or obvious under current, well-settled law." *United States v. Thornburgh*, 645 F.3d 1197, 1208 (10th Cir. 2011) (internal quotation marks omitted). Typically, an error is contrary to well-settled law

if "there is Supreme Court or controlling circuit authority resolving the issue." *United States v. Jones*, 74 F.4th 1065, 1069 (10th Cir. 2023). But even in the absence of controlling caselaw, an error may be plain when it contravenes the plain language of a rule, such as a sentencing guideline. *See id.* at 1070 ("[E]ven without controlling caselaw, an error can be plain when the plain language of a rule or statute clearly settles the question."); *United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (holding an error plain under the plain language of a sentencing guideline). Ms. Idowu argues the alleged error was plain under both standards. We disagree.

Ms. Idowu first suggests our holding in *United States v. Diaz-Menera*, 60 F.4th 1289 (10th Cir. 2023) resolves whether her conduct required application of § 2S1.1(a)(2). It does not. *Diaz-Menera* addressed a different question under different facts. There, the issue was whether drug conspiracy "can be an 'underlying offense from which the laundered funds were derived' under § 2S1.1(a)(1)." *Id.* at 1294. The question here is whether Ms. Idowu's actions establish that she "committed the underlying offense" of wire fraud or would be "accountable for the underlying offense" under the relevant-conduct guidelines. USSG § 2S1.1(a)(1)(A).

Ms. Idowu further emphasizes the district court in *Diaz-Menera* "'expressly found' the defendant committed overt acts" in furtherance of the drug conspiracy sufficient to apply § 2S1.1(a)(1). Aplt. Opening Br. at 22 (quoting *Diaz-Menera*, 60 F.4th at 1293–94); *see also id.* at 15; Aplt. Reply Br. at 8. That, she observes, did not occur here. To the extent she suggests *Diaz-Menera* requires a court to state its findings regarding § 2S1.1(a)(1) on the record, we do not read the decision as

6

establishing such a requirement.  The district court in *Diaz-Menera* made express findings because the defendant lodged a timely objection.  *Diaz-Menera*, 60 F.4th at 1292.  Ms. Idowu lodged no such objection.  Nothing in *Diaz-Menera* establishes that express findings are required in every case—much less that their absence renders application of § 2S1.1(a)(1) plainly erroneous where the defendant failed to raise the issue at sentencing.

Ms. Idowu also insists the plain language of the Guidelines and commentary compelled application of § 2S1.1(a)(2).  *See Brown*, 316 F.3d at 1158.  She highlights the fact that the Guidelines and commentary expressly differentiate between direct and third-party money launderers.  In her view, the record supports only that she was an after-the-fact money launderer who never communicated with the victims.  Without additional involvement in the underlying offense, she reasons, the district court's application of (a)(1) was plainly erroneous.[3]

But the guideline text does not foreclose the district court's application of § 2S1.1(a) in the clear and categorical manner required to show plain error.  Although the guidelines and commentary distinguish between direct and third-party

---

[3] Ms. Idowu emphasizes that she did not communicate directly with the victims.  *See* Aplt. Opening Br. at 4–5, 16.  But she directs us to no authority establishing that direct victim communication is necessary to support a wire fraud conviction or to establish aiding and abetting the offense.  *Cf United States v. Abbas*, 100 F.4th 267, 280 (1st Cir.) (rejecting a sufficiency challenge to wire fraud convictions where the defendant argued "the witnesses testified that they never communicated with him" on the grounds "[t]he government introduced evidence that [the defendant] set up and controlled the bank accounts that received the money."), *cert. denied*, 145 S. Ct. 319 (2024).

money launderers, that distinction does not resolve the question presented here: whether *this* record requires application of § 2S1.1(a)(2). The commentary provides that laundering criminally derived funds "after the commission of the underlying offense, without additional involvement," does not establish that the defendant committed or aided the underlying offense. USSG § 2S1.1, cmt. n.2(B). Nothing in the text clearly prescribes that providing the very accounts into which victims deposited funds cannot constitute the sort of "additional involvement" sufficient to support application of § 2S1.1(a)(1).

Nor has Ms. Idowu shown that, on this record, any error in the application of § 2S1.1(a)(1) rather than § 2S1.1(a)(2) was "so clear or obvious that it could not be subject to any reasonable dispute." *United States v. Starks*, 34 F.4th 1142, 1157 (10th Cir. 2022) (internal quotation marks omitted). Ms. Idowu characterizes her conduct as that of an "after-the-fact" "third-party money launderer." Aplt. Opening Br. at 17. But the record does not clearly support her claim. Wire fraud requires the use of interstate wire communications to facilitate the scheme. *Johnson*, 120 F.3d at 1108. As stated in the PSR, the scheme required "United States accounts and addresses" "to receive the funds." R., vol. III at 90–91. Ms. Idowu provided those accounts. Victims deposited funds directly into accounts she opened and controlled, including accounts under an alias and a shell business entity that does not appear to have ever operated as a legitimate business. Under these facts, it is at least plausible that Ms. Idowu's conduct was part of "complet[ing] the fraud"—not merely laundering its proceeds. *Id.* at 90. At a minimum, the record places the nature of

8

Ms. Idowu's conduct—as third-party money laundering or as "additional involvement" in the underlying offense—in reasonable dispute. USSG § 2S1.1, cmt. n.2(B); *see Starks*, 34 F.4th at 1157. That suffices to defeat prong two of plain error review. *See United States v. Finnesy*, 953 F.3d 675, 702 (10th Cir. 2020) (declining to find plain error where the record did not make the alleged mistake "clear or obvious").

IV

For the foregoing reasons, Ms. Idowu's claim of error fails. We accordingly affirm Ms. Idowu's sentence.

Entered for the Court


Carolyn B. McHugh
Circuit Judge